LOCAL NO. 293 OF the INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS OF the UNITED STATES AND CANADA, Plaintiff-Appellee,

v.

LOCAL NO. 293–A OF the INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS OF the UNITED STATES AND CANADA, Defendant-Appellant.

No. 74–3861.

United States Court of Appeals,
Fifth Circuit.

Jan. 23, 1976.

George J. Dowd, Chalmette, La., Victor H. Hess, Jr., New Orleans, La., for defendant-appellant.

Jerry L. Gardner, Jr., New Orleans, La., for plaintiff-appellee.

Before BELL and DYER, Circuit Judges, and MEHRTENS, District Judge.

BELL, Circuit Judge:

This is an appeal from the grant of a partial summary judgment ordering the merger of two segregated local unions. The district court held the maintenance of segregated locals to be violative of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–2(c)(2).[1] The court also denied a motion to dismiss for lack of jurisdiction. Finding the latter ruling erroneous, we reverse.

Appellee Local 293 is a predominantly white union with over 90 members. Local 293–A is a predominantly black union having fewer than 10 members, two of whom are white. Both unions operate in the same geographical area of New Orleans and have existed as separate locals for many years. Each local is affiliated with the International Alliance of Theatrical Employees and Moving Picture Operators of the United States and Canada (IATSE).

Local 293 and its members brought this action claiming that the failure and refusal of Local 293–A to merge has denied Local 293 the opportunity to enter into collective-bargaining agreements with many employers and has denied many employees the right to be represented by any labor organization. This was caused by both unions seeking contracts with the same employer. Plaintiffs also alleged in conclusionary terms, that Local 293–A discriminated against them on the grounds of race and color. Both injunctive relief and damages were sought. Without an evidentiary hearing and on a bare record, the district court ordered the merger of the two unions but reserved ruling on the damage claim until a trial on the merits.

On the question of jurisdiction, the Civil Rights Act of 1964 specifically states that only labor organizations "affecting commerce"[2] are subject to its provisions. The Act provides:

(e) A labor organization shall be deemed to be engaged in an industry affecting commerce if (1) it maintains or operates a hiring hall or hiring office which procures employees for an employer or procures for employees employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, . . . because of such individual's race, color, religion, sex, or national origin;

. . .

---

1. 42 U.S.C.A. § 2000e–2(c)(2) provides in relevant part:

(c) It shall be an unlawful employment practice for a labor organization—

. . . . .

(2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for

2. 42 U.S.C.A. § 2000e(d).

opportunities to work for an employer, or (2) the number of its members (or, where it is a labor organization composed of other labor organizations or their representatives, if the aggregate number of the members of such other labor organization) is (A) twenty-five or more during the first year after March 24, 1972, or (B) fifteen or more thereafter, and such labor organization—

(1) is the certified representative of employees under the provisions of the National Labor Relations Act, as amended, or the Railway Labor Act, as amended;

(2) although not certified, is a national or international labor organization or a local labor organization recognized or acting as the representative of employees of an employer or employers engaged in an industry affecting commerce; or

(3) has chartered a local labor organization or subsidiary body which is representing or actively seeking to represent employees of employers within the meaning of paragraph (1) or (2); or

(4) has been chartered by a labor organization representing or actively seeking to represent employees within the meaning of paragraph (1) or (2) as the local or subordinate body through which such employees may enjoy membership or become affiliated with such labor organization; or

(5) is a conference, general committee, joint or system board, or joint council subordinate to a national or international labor organization, which includes a labor organization engaged in an industry affecting commerce within the meaning of any of the preceding paragraphs of this subsection.

At the outset it is observed that Local 293 makes no claim that Local 293–A "maintains or operates a hiring hall or hiring office." Absent such an allegation, Local 293 must show that the membership of Local 293–A satisfies the minimum membership requirement of the Act.

Appellant contended in its motion to dismiss for lack of jurisdiction that it had fewer than 15 members and thus was not subject to the Act. Indeed, plaintiffs alleged that appellant-defendant had fewer than ten members. The district court denied the motion without explanation.

■ A review of the legislative history of 42 U.S.C.A. § 2000e(e) leads this court to the conclusion that Congress intended to exempt small local labor organizations of the type here at issue. See 1964 U.S.Code Cong. & Admin.News, p. 2402. The jurisdictional requirements of 42 U.S.C.A. § 2000e(e) were copied nearly verbatim from the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 402. There was, however, one notable change. The 1959 Act contained no requirement that a labor organization be of a certain size in order to be regulated. In originally limiting Title VII's coverage to 100-member labor organizations (since reduced to 15 members) we must assume that Congress intended to restrict its regulation short of the power invested in it by the Commerce Clause.

Local 293 asserts, however, that the Act applies to Local 293–A because of the affiliation with the International, IATSE. It is claimed that IATSE exercises "sufficient control" over the membership and transfer policies of the local to allow the aggregation of membership numbers in reaching the jurisdictional minimum. The only authority cited for this proposition is Case No. 7013, EEOC, July 10, 1969, 2 FEP cases 117. The affidavit filed by appellee offers no support for such a theory.

This approach of aggregating International and Local memberships may be likened to the "substantial identity" the-

ory advanced in *United States v. Jacksonville Terminal Co.,* M.D.Fla., 1972, 351 F.Supp. 452.[3] In that case private plaintiffs brought an action against several international unions and their locals, some of whom had fewer than 25 members. The district court found jurisdiction over the locals because there existed,

" . . . such a substantial identity between the members of defendant unions in the employ of the Terminal and the various and respective national and international labor organizations of which they are members [as to be] indistinguishable for the purposes of 42 U.S.C. § 2000e(d), (e) and (h). *Cf. Hassell v. Harmon Foods, Inc.,* supra [6 Cir., 1972, 454 F.2d 199]."

■ We note that the instant case involves only one defendant local. The International, IATSE, was not joined as a party defendant as was the case in *Jacksonville Terminal.* Without deciding the propriety of the "substantial identity" or "substantial control" test, we hold that no such theory of jurisdiction may be advanced absent joinder of the International as a party defendant. Once this is done, there must be some showing to support the claim of substantial identity.

■ We conclude that the district court erred in denying the motion to dismiss for lack of jurisdiction.[4]

Reversed and remanded for further proceedings not inconsistent herewith.

---

**3.** On remand from this court's decision, 5 Cir., 1971, 451 F.2d 418.

**4.** Although our holding requires that we pretermit decision on the validity of the grant of partial summary judgment, in the interest of judicial economy, we note that the district court did not find, specifically, any "actual discriminatory effects on employment opportuni-

ties," as is required by *EEOC v. International Longshoremen's Ass'n,* 5 Cir., 1975, 511 F.2d 273, 280, and *United States v. Jacksonville Terminal Co.,* 5 Cir., 1971, 451 F.2d 418, 457. Should jurisdiction subsequently be found in this case, the plaintiffs must demonstrate such discriminatory effects.